EICHELBERGER *vs.* FINLEY & VAN LEAR.—June, 1826.

Notice of nonacceptance of a bill of discharge, is not necessary where the drawer, at the time when presentment should be made, has no effects in the hands of the drawee, or having such effects, withdraws them before presentment is made, and has no reasonable grounds to expect his bill to be honoured.

In relation to notice in such a case, there is no distinction between a refusal to accept, and a refusal to pay, the same principles apply to both.

A party who draws a check upon a bank, without funds in the bank to meet it, is not entitled to notice of nonpayment, nor is he discharged by the holder's not presenting it within reasonable time.

Between individuals there may be a mutual confidence and credit, and they may honour each other's bills with or without effects, so as perhaps to entitle them to notice, though they have no effects; but no such confidence or credit can exist between a bank, and its customers; and the officers of a bank cannot, without a gross violation of their trust, honour a check or draft beyond the amount of the drawer's deposits.

APPEAL from *Baltimore* County Court.    This was an action of *assumpsit,* brought by the appellees against the appellant and *W. Eichelberger,* (who was returned *non est,*) for work and labour, goods, wares and merchandise, for money lent and advanced, and paid, laid out and expended, and on an *insimul computassent.*    The general issue was pleaded.    The plaintiffs at the trial offered to read in evidence the two following checks, drawn by the defendants—"No. 613.  *Baltimore,* March 26th 1819.  Cashier of the *Commercial and Farmers' Bank.*  Pay to *M. E.* or bearer, fourteen hundred and fifty dollars.  1450 dollars.  *J. & W. Eichelberger.*"  "No. 619.  *Baltimore,* March 26th, 1819.  Cashier of the *Commercial and Farmers' Bank.*  Pay to No. 619, or bearer, fifteen hundred dollars.  1500 dollars.  *J. & W. Eichelberger.*"

And also proved, that they, were the legal holders of the same. That the checks were presented for payment at the *Commercial and Farmers' Bank,* upon which they were drawn, on the third of June, subsequent to the date of the same.    The defendants then gave in evidence, by Mr. *Dunbar,* the Cashier of said bank, that on the day of the date of said checks, the defendants had funds in said bank to the amount of $500; on the day following, to the amount of $400; and for several days subsequent, had from two to four hundred dollars of funds in said bank.    They also proved that no notice was given to the defendants of the nonpayment of the checks, until the 3d of June 1819, the day on which they were presented, as stated in the plaintiff's evidence, for payment.    And they also proved by the same witness, that the defendants were indebted on a *stock* transaction, to the said bank, in more than the amount they had then in bank; and in May 1819, the funds which the defendants then had in bank, were appropriated by the bank to the payment of said debt.    The plaintiffs then further gave in evidence, that it was the general usage of the banks in *Baltimore* not to pay

checks, unless the party drawing them had funds sufficient to meet the same; but that sometimes the cashier paid them for a small amount, when there were not funds sufficient to meet them. And it was admitted that said bank, during the whole period from the date of said checks, to the present time, was solvent. The defendant then moved the court to instruct the jury, that upon the whole of the evidence the plaintiffs were not entitled to recover; which instruction the Court, [*Archer*, Ch. J.] refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, and DORSEY, J.

*R. Johnson*, for the Appellant, contended, 1. That the neglect of the appellees to present the checks at the bank, upon which they were drawn for payment, within a reasonable time, and the neglect to give notice of their nonpayment by the bank, within a reasonable time, to the appellant, (the drawer of the checks) entitled the appellant to the direction and opinion he prayed in the court below. 2. That the presentation and notice on the 3d of June 1819, were not made within a reasonable time; and that the want of sufficient funds, as set forth in the bill of exceptions, was not in law an excuse for the neglect to make such presentment, and give such notice within a reasonable time.

On the *first* point, he cited *Chitty on Bills*, 24, 280, 282; and *Rickford vs. Ridge*, 2 *Campb.* 537.

On the *second* point, he cited *Bickerdike vs. Bolman*, 1 *T. R.* 405. *Walwyn vs. St. Quintin*, 1 *Bos. & Pull.* 654. *Legge vs. Thorpe*, 12 *East*, 175. *Clegg vs. Cotton*, 3 *Bos. & Pull.* 241. *Thackray vs. Blackell*, 3 *Campb.* 144. *Blackhan vs. Doren*, 2 *Campb.* 503. *Chitly on Bills*, 215 to 223. *Orr vs. Maginnis*, 7 *East*, 359. *Dennis vs. Morris*, 3 *Esp. Rep.* 158; and *Clopper vs. The Union Bank of Maryland*, (ante 92.)

*Gill*, for the Appellees, cited *Chitty on Bills*, 318, 319, (*London Ed.*) *Brown vs. Maffey*, 15 *East*, 221. *Cruger vs. Armstrong*, 3 *Johns. Cas.* 259; and *Cory vs. Scott*, 5 *Serg. & Low.* 401.

DORSEY, J. delivered the opinion of the Court. Were the appellees, under all the circumstances of this case, bound to use reasonable diligence in demanding payment, and in giving notice to the defendant of the dishonour of his checks, are the only questions submitted to the consideration of the court. It is not pretended that a failure to do so has subjected him to loss or in- convenience.

"The reason," (says *Chitty*, in his Treatise on Bills of Exchange,) "why the law requires the holder to give due notice of nonacceptance by the drawee is, that the anterior parties to the bill may respectively take the necessary measures to obtain payment from the parties respectively liable to them; and if notice be not given, it is a presumption of law that the drawer and endorsers are prejudiced by the omission." The requisition of notice of nonpayment rests on precisely the same prin- ciple.

On this simple and once universal rule an innovation was made by the decision in *Bickerdike vs. Bollman*, 1 *T. R.* 405, which, with the most of the distinguished judges in *England* since that period, has been a theme of regret; and in their zeal to limit the operation of the exception there introduced, within the smallest practicable compass, they have explained and frittered it away, until there is but little of it left; and the reasons upon which, in their decisions, they have made that little to depend, are so various, inconsistent, and unsatisfactory, that it is a task of no inconsiderable difficulty to extract from them any certain rule of law, by which this class of cases may be readily distinguished. The rule Justice *Buller* professed to establish in *Bickerdike vs. Bollman* was, that notice to the drawer was not necessary, "if it be proved on the part of the plaintiff that from the time the bill was drawn, till the time it became due, the drawee never had any effects of the drawer in his hands." The reason of the rule, as there stated by the learned judge, was that the drawer could not be injured by the want of notice. In *Clegg and another vs. Cotton*, 3 *Bos. & Pull.* 239, the rule dispensing with notice is stated to be founded on the fraud of the drawer in drawing without effects; and the same position is also advanced by Justice *Ashhurst*, in *Bickerdike vs. Bollman*. But the fallacy of this doctrine, (if authority be ne-

cessary to show it,) is fully established by cases of *Legge vs. Thorpe*, 12 *East*, 170, and *Claridge vs. Dalton*, 4 *Maule & Selwyn*, 226, where the conduct of the defendants is free from the slightest imputation of fraud. The true *rationale* of the rule introduced in *Bickerdike vs. Bollman*, is that given by Justice *Buller*, "that the drawer could not be injured by the want of notice." Why not injured by the want of notice? Because the object of notice is to let the drawer know that his bill has been dishonoured, and this he already knew from the nature of the circumstances connected with it. To require a party to be notified of a fact of which he has already a perfect knowledge, does appear to be a solecism not at all in harmony with that beautiful system of reasoning and good sense, which pervades every branch of legal science. The many distinguished judges who have disapproved of this rule, in expressing their regrets at its introduction, correctly state it to be "the substitution of knowledge for notice," and yet when called upon to apply the principle to the facts in each particular case, such has been the anxiety to limit the extent of its application; such the desire to ingraft upon it restrictions and discriminations, by which future cases may evade its operation, that in subtleties and refinements the essence and meaning of the rule has been almost wholly lost sight of. Of this the case of *Orr and others vs. Maginnis*, 7 *East*, 359, is a memorable illustration. There, a captain in the *African* trade in January 1802, in *Demerara*, drew a bill of exchange upon Messrs. *Mullian, Lennox* and *Co.* of *Liverpool*, for £172 18 1, payable at 90 days sight to the plaintiffs, or order, at which time the drawer had effects, (but to what amount does not appear,) in the hands of the drawees, but in May 1802, his whole balance, amounting to the sum of £116, was paid to him by them, they having no notice of this bill; and from July 1802, when it was presented for acceptance, up to the 22d of October 1802, when it was presented for payment and refused, the drawees had no effects of the drawer in their hands. No notice of nonacceptance was given to the drawer, he not being then to be found, having no settled place of residence, and for want of such notice the plaintiffs were nonsuit at the trial. A motion for a new trial was overruled by the Court of King's Bench, and Lord

*Ellenborough,* in delivering their opinion, bottoms the refusal on the ground that the drawer had effects in the hands of the drawees *at the time the bill was drawn.* If a case can be imagined in which a want of effects, with a knowledge in the drawer that his bill would be dishonoured, dispenses with notice, it might well be supposed that this was that case. It does not appear that the drawer, at the time the bill was drawn, before or subsequently, ever had credit with the drawees for one farthing more than to the amount of the effects in hand. Having then withdrawn the only fund which could sustain the honour of his bill, did he not know by anticipation the fact of its nonacceptance? The knowledge of the drawer, which is deemed a substitute for notice, does not depend upon that state of things which exists at the time the bill is drawn, but which exists at the time it should be presented. It matters not, therefore, whether the drawer have effects with the drawee when the bill is drawn, or not, nor whether he then have any reasonable grounds to expect that his draft will be accepted. Even if the drawer, contemplating a fraud, should at the time of drawing have no effects in the drawee's hands, and should not expect to have any at any period thereafter, or that his bill would be honoured; yet, if before presentment, repenting of his conduct, he should place adequate funds with the drawee, can it be doubted that he would be entitled to notice? And *e converso,* if a drawer having ample effects in the drawee's hands at the time of drawing. and confidently expecting that his bill would be honoured, should before presentment fraudulently withdraw them from the drawee, abandoning all expectation of the honour of his bill, can it be denied that he would not be entitled to notice? And why? Because the knowledge, which is imputed to him, is that which he possessed at the time of presentment, not of drawing. Upon reasoning and on principle, therefore, the true rule applicable to cases of this kind appears to be, that notice is dispensed with where the drawer, at the time when presentment should be made, had no effects in the hands of the drawee, or having such effects should withdraw them before presentment is made, and in neither case should have any reasonable grounds to expect that his bill would be honoured.

It must be admitted that the doctrine here advanced is some-

what at variance with the opinion of the supreme court of the *United States*, delivered by Chief Justice *Marshall* in *French's Ex'x. vs. The Bank of Columbia*, 4 *Cranch*, 157, in which it is stated that it cannot be said "that actual notice is useless, and the want of it can do him (the drawer,) no injury, for this is only true when *at the time of drawing* the drawer has no reason to expect that his bill will be paid.

This case has been treated as if it had arisen on a refusal to accept, when in truth it arises on a refusal to pay; but as far as concerns the matters here in controversy, the principles regulating both cases cannot be distinguished.

The same rule having been adopted in practice in this state, and sanctioned by courts of justice, as that recognized in *Bickerdike vs. Bollman*—under the circumstances of this case, is such knowledge of the nonpayment of his checks to be imputed to the appellee, as supersedes the necessity of actual notice? On this subject the court, looking as they must do only to the facts in the record, entertain not the shadow of a doubt, that he knew, when he drew the checks, that they would be dishonoured, and never at any subsequent period had reason to expect that they would be paid by the bank, and cannot therefore set up as a defence the want of notice. The cases of *Orr and others vs. Maginnis*, 7 *East*, 359, and *Thackray vs. Blackett*, 3 *Campb.* 164, have been urged by his counsel as conclusive in his favour. But it is conceived, that waiving all exceptions to the soundness of those decisions, they bear no application to the case now under consideration. They were made on transactions between individual correspondents who may have had a mutual confidence and credit, and were perfectly competent to honour each other's bills drawn either with or without effects. Not so as to the officers of the public banking institutions in this state. With them the customers of the bank have no accommodation credit, and without a gross violation of their trust, they can honour no check or draft upon them, beyond the amount of deposits standing to the credit of him by whom such check or draft may be drawn.

It has been objected, that the failure to present the checks for payment within a reasonable time, has discharged the drawers. But there is nothing in this objection. If demand had

been duly made, and payment refused, he was not entitled to notice thereof. It was an act, therefore, the omission or performance of which, as to him, was wholly immaterial.

JUDGMENT AFFIRMED.