(Decided 21st June, 1872.)

---

FREDERICK SCHUCHARDT and LAWRENCE WELLS, Surviving Partners of FRED'K G. SCHUCHARDT, Trading as FREDERICK SCHUCHARDT & SONS, *vs.* WILLIAM TAYLOR HALL and THOMAS D. LONEY, Trading as HALL & LONEY.

*When the Drawer of a Bill of Exchange is not entitled to require formal Presentment for acceptance, and Notice of its non-acceptance.*

The defendants drew a bill of exchange, payable in London, dated the 22d of May, 1868, at sixty days sight, on Joseph and Charles Sturge, Birmingham; the bill, on its face, was drawn against a cargo of wheat per the "Ocean Belle;" on the day of the date of the bill, the drawers sold and endorsed it to the plaintiffs, and on the same day, by letter of hypothecation, lodged the bill of lading for the cargo with them, as collateral security for the acceptance and payment of the bill, and authorized them, in case they thought it necessary, to place said wheat on its arrival, in the hands of their brokers for immediate sale, and to apply the proceeds towards the payment of the bill. The drawees declined to accept the bill, unless they were put in possession of the bill of lading of the cargo against which it was drawn. On the non-acceptance of the bill, the cargo was sold by the London agents of the plaintiffs, and the net proceeds were applied towards the payment of the bill, but being insufficient, suit was brought against the defendants to recover the deficiency and statutory damages, after notice to them of all the facts, and demand of payment. HELD: .

Schuchardt *vs.* Hall & Loney.

That the drawees were not bound to accept the bill of exchange, without the delivery to them of the bill of lading; that the defendants gave the plaintiffs the legal right to retain the bill of lading until the maturity of the bill of exchange; and the defendants were not entitled to require formal presentment of the bill of exchange for acceptance, and notice of its non-acceptance.

APPEAL from the Circuit Court for Howard County.

This suit was instituted in the Superior Court of Baltimore City, and, upon the suggestion and affidavit of the defendants, was removed to the Circuit Court for Howard County. The facts of the case sufficiently appear in the opinion of the Court.

*Exception:* The plaintiffs offered the following prayer:

If the jury find, from the evidence, that the defendants were not authorized by Joseph and Charles Sturge to draw on them the bill of exchange, given in evidence, without delivering to them the bill of lading of the cargo of wheat shipped by the "Ocean Belle," referred to in the bill of exchange, and that the bill of exchange was drawn against said cargo, and that the defendants executed and delivered to the plaintiffs the letter of hypothecation of said cargo given in evidence, then the defendants are not entitled to demand notice of the due presentment of said bill of exchange to Joseph and Charles Sturge, and of protest thereof for non-acceptance.

The Court (MILLER, J.) rejected the prayer of the plaintiffs, and gave the following instruction to the jury:

That there is no sufficient evidence in the case from which the jury can find due presentment for acceptance of the bill of exchange offered in evidence, and the plaintiffs are not entitled to recover.

To the rejection of their prayer, and to the instruction given by the Court, the plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, BOWIE, GRASON and ROBINSON, J.

*Stewart Brown* and *Geo. Wm. Brown,* for the appellants.

Two questions of interest arise on this appeal:

1st. Whether the appellees, the drawers of the bill of exchange, under the circumstances stated in the testimony, were entitled to require formal presentment for acceptance and notice of non-acceptance?

2d. If they were so entitled, whether there was not "sufficient evidence from which the jury could find due presentment for acceptance" of said bill?

Upon the first of these points the question is: Do the facts in the case bring it within the rule laid down in *Eichelberger vs. Findley,* 7 *H. & J.,* 386? That the drawer is not entitled to presentment and notice, "where, at the time when presentment should be made, he had no effects in the hands of the drawee, or, having such effects, should withdraw them before presentment is made, and in neither case should have any reasonable ground to expect that his bill should be honored." *Cathell vs. Goodwin,* 1 *Har. & G.,* 471; *Orear & Berkley vs. McDonald, et al.,* 9 *Gill,* 350, 357; *Rhett vs. Poe,* 2 *Howard,* 457; 1 *Parsons on Notes and Bills,* 548, 549, and cases cited; *Valk vs. Simmons,* 4 *Mason,* 113.

Applying the rule of law laid down in these authorities to the facts of this case, we find:

1st. That it is not merely strongly implied throughout, but is expressly stated, that the drawers had *no funds,* entitling them to draw, in the hands of Messrs. Sturge from the time when the bill was drawn, to the time when it was presented—and

2d. That it is equally clear that the only authority to draw at all, arose out of the contemplated shipment of grain, per "Ocean Belle," *to the drawees.*

For the letter of hypothecation states that the bill is drawn *against* the *shipment.*

Without an explicit understanding to that effect between drawers and drawees, (and any such understanding is expressly denied by Messrs. Sturge, nor is there the slightest

evidence thereof in the record,) the shipment of the grain "*to order*" of third parties, was not such a compliance with the contract of shipment as entitled the drawers to entertain a reasonable expectation that the bill would be accepted without surrender of the bill of lading, (after the drawers had parted with the bill of lading, that is the very title to the grain, and put it in the power of any holder thereof to sell the same.)

It would also appear, that notwithstanding the express pledge of the cargo to the appellants to secure *payment* as well as acceptance, the drawers themselves never did, in point of fact, *expect* that the draft would be accepted without such surrender *on acceptance*. For in their letter of 23d June, 1868, to the appellants, they complain of the separation of the bill of lading and collateral documents from the bill, as destroying the unity and entirety of the transaction, and likewise complain that the appellants had no right to *present a naked* bill of exchange, and thus force the honor of their name into question; and again in their letter of same date, June 23d, 1868, to Messrs. Sturge, they say : " we do not clearly understand why you do not accept, &c., and why, as you say, you *cannot obtain* the bill of lading *upon your accepting,*" and likewise appeal to Messrs. Sturge to accept " for their (the drawers) sake," and likewise excuse themselves for the hypothecation of the bill of lading "upon the ground that they could not otherwise negotiate the bill." This might be sufficient excuse for pledging the bill of lading to secure acceptance, but certainly was not sufficient, without express authority, for pledging it to secure payment likewise.

The drawees therefore authorizing a draft only against a shipment, would not be *bound* to accept unless the contract of shipment had been complied with, and *no reasonable expectation that the bill would be honored* when presented, could arise in any case, where, as between the drawers and drawees of a bill, the latter would not be *bound* to accept.

To hold that the Messrs. Sturge were bound to accept after the bill of lading was in the hands of third parties, would make them (the drawees) liable in any event; would even make them take the risk of the solvency of the holders of the bill and of all the intermediate collecting agents during the period between acceptance and maturity, (60 days,) because the transfer and delivery for value by any such holder of the bill of lading, would deprive the drawees of the very cargo on the faith of which acceptance was based, and after acceptance they could not escape payment.

As to the effect on the rights of the drawees of the hypothecation of the bill of lading, the following cases were referred to : *Shepherd vs. Harrison,* 4 *Law Reports,* (*Queen's Bench,*) 496; *Byles on Bills,* 193; *Craig vs. Sibbett,* 15 *Penna.,* 238; *The Bank of Rochester vs. Jones,* 4 *Comstock,* 497; *Allen vs. Williams,* 12 *Pick.,* 297.

The prayer of the appellants should have been granted, and if the facts therein were found by the jury, and there was no conflicting evidence on that point, the appellees were not entitled to demand notice of the due presentment of the bill of exchange to the drawees, and of protest thereof for non-acceptance.

But if the Court should consider that under the circumstances, the drawers were entitled to have *due presentment* made and notice thereof, it is shown that notice of dishonor and protest was transmitted in due time, and there was sufficient evidence to go to the jury to establish the *fact* of due presentment.

Upon this point objection may perhaps be made by appellees, that there was evidence that any demand that was made was made by the notary's clerk. But that a notary's clerk is competent to make demand, is conceded by all the text books, 1 *Parson's Notes and Bills,* 360, and is settled in Maryland as the universal practice by the cases of *Munroe vs. Woodruff,* 17 *Md.,* 159; *Fulton vs. Maccracken,* 18 *Md.,* 528.

Schuchardt *vs.* Hall & Loney.

But another objection, was the fact that it appeared in the protest that the *formal demand* by the notary was made to a clerk in the employ of Messrs. Joseph and Charles Sturge. All the authorities agree that such a presentment is good if it appears that such clerk was the authorized agent to accept or refuse. 2 *Robinson's Practice,* 147; 1 *Parson's Notes and Bills,* 347, 349, 350. And it is laid down that proof of such agency may, as in other cases of agency, be circumstantial and indirect. *Nelson vs. Fotterall,* 7 *Leigh,* 179; *Stainback vs. The Bank of Virginia,* 11 *Grattan,* 260.

The question then is, had the clerk authority to make the answer he did make? On this point the record is sufficiently full and explicit. The answer of the clerk was in substance, that the firm declined to accept the bill of exchange unless the bill of lading of the cargo of wheat per "Ocean Bell," against which it was drawn, was given up to them, as per their contract with the shipper. I assumed, said he, to answer for the Messrs. Sturge, on my knowledge that it was not their custom to accept drafts unless bills of lading were given up in exchange; I had no authority in writing to act in the matter on behalf of the firm; I had the authority to do what I did by the knowledge of the course of dealing of the Messrs. Sturge. The notary or his clerk went to the place where the business of the Messrs. Sturge was carried on; he found a general clerk there who was in charge of their general business, *who assumed to act and answer,* who, took the bill, (just as his principal might have done to compare it with the books and invoices of the shipment,) and after a brief absence, returned precisely the same answer that had been given on the same day by his principals, to the bank, and in conformity with their written determination.

Wilson Sturge also, in his testimony, when speaking of this very presentation to his clerk, Mr. Derry, says, "that if the bill of lading had been tendered with the bill of exchange, the bill of exchange would have been accepted by my firm." On the next day, June 6th, Messrs. Sturge wrote

and telegraphed *their refusal to accept* to Hall & Loney. And when the notice of protest was sent to the appellees, *they* complained not that due presentment was not made, but that presentment of *a naked bill was* made.

The testimony, cumulative in its character, coming from legal sources and tending to prove, and in the judgments of the appellants establishing the point in controversy, should have been submitted to the jury. *McAndrew vs. Radway,* 34 *New York,* 511 ; *Wetherall & Mickle vs. Garrett,* 28 *Md.,* 450 ; *Wetherall vs. Claggett,* 28 *Md.,* 465 ; 1 *Parsons' Notes and Bills,* 639, (*note*;) *Whaley vs. Houston,* 12 *La. An.,* 585 ; *Phillips vs. Poindexter,* 18 *Ala.,* 579 ; 2 *Greenleaf's Evidence, secs.* 67, 178.

*Alexander H. Hobbs,* for the appellees.

The plaintiffs' prayer was properly rejected:

1st. Because it submits to the finding of the jury *absolutely* that there were no funds in the hands of the drawees of the bill of exchange ; whereas the question of *"reasonable expectation"* on the part of the drawers, that their bill would be accepted, was the proper inquiry. The right of notice of the dishonor turns not upon the fact whether the drawers of a bill of exchange *actually had funds* in the hands of the drawees, but whether they had reason to believe it would be accepted on due presentation. *Orear & Berkley vs. McDonald, et al.,* 9 *Gill,* 356 ; *Chitty on Bills,* 359, (*9th Am. ed.*;) *Story on Bills, sec.* 311 *and note,* (*4th ed.*;) *Byles on Bills,* 234 *and n.* 1, (*3d Am. ed.*)

2d. The burthen of proof is on the holder of a bill, to show that the drawer had no funds in the drawee's hands, in order to excuse want of notice. *Baxter vs. Graves,* 2 *Marshall,* 152 ; *Ralston vs. Bullitts,* 3 *Bibb,* 261 ; *Thompson vs. Stewart,* 3 *Conn:,* 172.

3d. The plaintiffs' prayer was radically defective, because, as there *was no conflict of testimony,* it was the legitimate sphere and province of the Court and *not* of the jury to

determine the question as to whether the defendants had "*reasonable expectations*" that their bill of exchange would, on due presentation, be accepted. *Orear & Berkley vs. McDonald, et al.,* 9 *Gill* 355.

Assuming the law to be well settled respecting this question, what is the evidence, which is all on one side, the defendants having offered none?

The defendants, on the 11th of May, 1868, offered, by telegraph, to sell a certain quantity of wheat to Joseph and Charles Sturge, of Birmingham, England, who answered on the following day, " *accepted; draw direct.*"

Wilson Sturge, whose evidence was taken by the plaintiffs, testified that the *defendants were authorized by his firm to draw the bill of exchange against the bill of lading of the cargo, on acceptance of the draft;* and further "that if the bill of lading had been tendered with the bill of exchange, the bill of exchange would have been accepted by my (his) firm." At or about the time of the shipment by the " Ocean Belle," there was another shipment by the brig " Hermelin ;" the draft against the cargo of the latter on presentation, with bill of lading, *was accepted,* and the Messrs. Sturge say they were prepared to do the same by the cargo of the " Ocean Belle."

And they further say, in their letter of the 12th of June, 1868, that they informed the holders of the bill that on the delivery of the bill of lading of the cargo of the " Ocean Belle," they would accept the bill of exchange ; that they had no desire to escape payment, but they objected to accepting *against nothing.* And, commenting on this matter, they say, "*the very fact of their* (the holders) *charging you* (the defendants) *an extra rate of exchange, proves that it was not contemplated that the bank should hold the documents until they were paid in cash.*"

The plaintiffs' prayer was, for these reasons, objectionable.

The bill of exchange is drawn *expressly* against the cargo of the " Ocean Belle ;" and the paper called a letter of hypothecation says, that it is " the understanding that the bill of

lading is *lodged as collateral security for the acceptance and payment of the bill of exchange.* Who then had the right to hold the bill of lading? Surely not the plaintiffs.

It is clear that it was the right and duty of the Court to pass upon and determine the legal operation and effect of the bill of exchange, and the paper called a letter of hypothecation.

The second question relates to the instruction of the Court to the jury, to the effect that the plaintiffs were not entitled to recover.

The protest states that the bill was presented for acceptance *" unto a clerk in the employ of Messrs. Joseph and Charles Sturge, the persons upon whom the same is drawn, and demanded acceptance thereof, and he answered that he had no orders."*

It is necessary, in making the presentation of a bill of exchange for *acceptance,* that it should be made to the drawer or to his duly authorized agent. In all matters of agency, before the acts or declarations of a supposed agent can be given in evidence against his principal, the *factum* of the agency must be clearly established. *Marshall vs. Haney,* 4 *Md.,* 499. So also in the case of a partnership, which is but a mutual agency; *before* the acts or declarations of a supposed partner can be used as evidence, the *co-partnership* must be established. *Byles on Bills,* 141, 142; 2 *Greenl. on Ev.,* sec. 181; 1 *Parsons on Bills,* 349; *Story on Bills,* sec. 229, (5th ed.;) *Farmers and Mechanics' Bank of Carroll County vs. Allen,* 18 *Md.,* 478; *Chitty on Bills,* 301, 306, 307, 400; *Wiseman vs. Chiappella,* 23 *Howard,* 377–379.

It is clear, on authority as well as on principle, that a greater degree of diligence is required in the presentation of a bill of exchange for *acceptance* than there is in the demand for *payment,* for the obvious reason where, as in this case, the bill is made payable a certain number of days after sight. How is the drawee to know when presentation will be made? The holder is not bound, ordinarily, to present for acceptance.

Schuchardt *vs.* Hall & Loney.

But when the drawee accepts the bill, he thereby *fixes* the day of payment, and is held to his legal obligation to perform his contract at the appointed time.

In this case the notary was extremely negligent. He says he presented the bill to a clerk of Joseph and Charles Sturge, the drawees. *He did not even know the clerk's name; did not know what position he held under the firm;* was informed by the clerk that neither of the partners was at home. Whereupon he proceeded to protest the bill for non-acceptance, without any further effort to make due and proper presentation. It is the duty of the notary, under such circumstances, to use such care and diligence as a prudent business man would use in his own case. *Whitridge vs. Rider,* 22 *Md.,* 558. What business man would have contented himself with the efforts of this notary? The judgment ought to be affirmed.

BARTOL, C. J., delivered the opinion of the Court.

This suit was brought by the appellants, bankers of New York, against the appellees, as drawers of a bill of exchange, dated May 22d, 1868, at sixty days sight, on Joseph and Charles Sturge, Birmingham, England; drawn against a cargo of red wheat, per brig "*Ocean Belle,*" and payable in London.

Upon the day of the date of the bill, the appellees sold and endorsed the same to the appellants, and on the same day, by letter of hypothecation, "lodged the bill of lading for the cargo with the appellants as collateral security for the acceptance and payment of the bill, and authorized the appellants, in case they thought it necessary, to place said red wheat on arrival in the hands of the appellants' brokers for immediate sale, and to apply the proceeds in or towards payment of the bill."

The bill of exchange was sent by the plaintiffs in due course of mail, together with the collateral documents, to the Union Bank of London, and was by it transmitted to the "Birmingham and Midland Bank," Birmingham, to procure

acceptance. The drawees, Joseph and Charles Sturge, declined to accept the bill, considering themselves not bound to do so by their contract with Hall & Loney, the drawers, unless they were put in possession of the bill of lading of the cargo against which it was drawn. The Union Bank of London, the agent of the plaintiffs, considering that by the letter of hypothecation, it was entitled to hold the bill of lading as "collateral security for the *payment of the draft*," retained possession of the same.

The bill was protested for non-acceptance, and notice thereof was transmitted to the defendants, the drawers.

Upon the dishonor of the bill, the cargo was sold under the direction of the London agents of the appellants, and the net proceeds applied towards payment of the amount of the bill; but being insufficient, this suit was brought to recover the deficiency and statutory damages; after notice of all the facts to the appellees, and demand of payment from them.

At the trial of the case, one prayer was offered by the plaintiffs which was rejected, and an instruction was given to the jury "that there was no sufficient evidence in the case, from which they could find due presentment for acceptance of the bill of exchange offered in evidence, and that the plaintiffs were not entitled to recover."

It appears from the proof that the presentment was made by the *notary's clerk* to a clerk in the employ of Messrs. Joseph and Charles Sturge, at their counting house or place of business. The clerk of the notary was competent to act, as was decided in *Munroe vs. Woodruff & Robinson,* 17 *Md.,* 159, and *Fulton vs. Maccracken,* 18 *Md.,* 528. But it is objected that the presentment ought to have been made to the Messrs. Sturge, and that a presentment to their clerk was not sufficient. But this depends upon whether the clerk was their agent in the premises duly authorized to accept or refuse. Such authority may be proved by parol; and "the proof may, as in other cases of agency, be circumstantial and indirect." 1 *Parsons on Bills and Notes,* 349; *Nelson vs.*

*Fotterall,* 7 *Leigh,* 179; *Stainback vs. The Bank of Va.,* 11 *Grattan,* 260.

We think that in this case there was evidence, competent and sufficient to be submitted to the jury to prove, that the clerk of the drawees was authorized to refuse acceptance of the bill; and therefore the instruction given to the jury was erroneous.

But in the view we have taken of this case, it is not important to discuss this question further, because we are of opinion that under the circumstances stated in the testimony, the defendants were not entitled to require formal presentment for acceptance and notice of non-acceptance of the bill of exchange.

There can be no doubt of the correctness of the appellants' position, that the effect of the delivery of the bill of lading to them, together with the letter of hypothecation as collateral security, both for the acceptance and payment of the bill of exchange, was to entitle them to hold the same till the bill should be paid; they were not legally bound to surrender the security, upon the acceptance of the bill, and to trust to the personal liability of the acceptors, for its payment. This exonerated the drawees from their obligation to accept; because under their contract with the defendants, the latter were authorized to draw, only against the *cargo of wheat* to be shipped by the *"Ocean Belle,"* and they were therefore not bound to accept without the delivery to them of the bill of lading. *Allen vs. Williams,* 12 *Pick.,* 297; *Bank of Rochester vs. Jones,* 4 *Coms.,* 497; *Craig vs. Sibbett,* 15 *Penn.,* 238; *Shepherd vs. Harrison,* 4 *L. R.,* (*Q. B.,*) 496.

Thus it is clear that the defendants, after drawing the bill of exchange, placed it in the power of the plaintiffs, and gave them the legal right, to retain in their own hands until the maturity of the bill, and to withhold from the drawees, the muniment of title to the shipment, without the receipt of which the latter were under no obligations to accept the bill.

The question is whether this state of facts is sufficient to dispense with the necessity of a due presentment and notice of non-acceptance.

In *Rhett vs. Poe*, 2 *How.*, 457, it was held that "where a drawer of a bill has no right to expect the payment of it by the acceptor; where, for instance, the drawer has withdrawn, or intercepted funds which were destined to meet the bill, or its payment was dependent upon conditions which he must have known he had not performed, such drawer cannot claim to be entitled to notice of the non-payment of the bill." .

The same rule applies to the non-acceptance of a bill. *Eichelberger vs. Finley*, 7 *H. & J.*, 386.

The rule of law applicable to this subject has been laid down by this Court in *Orear & Berkley vs. McDonald, et al.*, 9 *Gill*, 350.

The result of the decisions is, that the right of notice of dishonor does not turn absolutely upon the fact, whether the drawers of the bill of exchange actually had funds in the hands of the drawees; but whether they had a reasonable expectation that the bill would be accepted and paid. To quote the language of the Court in the case last cited: "If the drawers, at the time when the bill should have been presented, had the right to expect, reasoning upon the state of facts connected with the transactions as they then existed between the drawees and themselves, that their bill would be honored, they were entitled to demand and notice." We refer also to *Claridge vs. Dalton*, 4 *M. & S.*, 230; *Kinsley vs. Robinson*, 21 *Pick.*, 328, and *Dickens vs. Beal*, 10 *Pet.*, 577.

Applying the rule deduced from these cases to the one before us, we are of opinion that by the course pursued by the appellees, in parting with the bill of lading and pledging it as collateral security to the appellants, both for the acceptance of the bill of exchange and for its *payment* at maturity, they violated their contract with the drawees, and had no reasonable ground to expect that they would accept the bill. Such a proceeding was equivalent to intercepting the fund

Schuchardt *vs.* Hall & Loney.

upon which the bill was drawn, and brings the case within the principle of *Rhett vs. Poe*, 2 *How.*, 457.

There is no doubt that in this case the appellees acted in good faith, and that they honestly expected or hoped that the bill would be accepted; but the rule of law requires that they should have had a reasonable ground for their expectation; that is, that it should have been based upon a promise or engagement of the drawees to accept, or an authority derived from them to draw the bill; and a performance of the contract or condition on the part of the defendants upon the performance of which the acceptance of the bill depended.

They must be charged with knowledge of the legal consequences of their own acts, and cannot be heard to say that they were ignorant of the construction and effect of their contract of hypothecation. And having thus failed to comply with their contract by transmitting to the drawees the muniment of title to the cargo, against which alone the bill was drawn, they cannot be said to have had such reasonable grounds to expect that the bill would be honored, as to entitle them to insist upon due presentment and notice of its nonacceptance.

Being of opinion that the Circuit Court erred in its instruction given to the jury, and that the appellants are entitled to have an instruction given to the jury in conformity with the views herein expressed, we reverse the judgment and order a new trial.

*Judgment reversed and*
*new trial ordered.*

(Decided 21st June, 1872.)

STEWART, J., dissented.