Decided 8th February, 1894.)

---

# THE EXCHANGE BANK OF WHEELING *vs.* THE SUTTON BANK.

### *Negotiable instrument—Check—Notice of Non-payment.*

The defendant Bank being indebted to the plaintiff Bank for cer-
tain collections made by the former on account of the latter,
mailed to the plaintiff a check drawn by the defendant on J. J.
Nicholson & Sons, bankers, with whom both parties kept
accounts. On the day it was received the plaintiff forwarded it
by mail, endorsed "for collection and credit account," to J. J.
Nicholson & Sons. The defendant had at the time on deposit to
its credit with the banking house a sum in excess of the amount
of the check. The check on the day of its receipt was entered
to the debit of the defendant's account, but was not then entered
as a credit to the account of the plaintiff. Being hopelessly
insolvent, later in the day Nicholson & Sons made an assignment
to trustees for the benefit of creditors, and the trustees, after they
had taken possession, entered the check to the credit of the
plaintiff. At the time of the receipt of the check the Nicholsons
did not have in their banking house the amount of the check in
actual cash. If the check was protested, no notice of the protest
or of the non-payment was sent to or received by either the

NOTE. A note on the nature of drafts by one Bank on another, is published with
this case in 23 *L. R. A.,* 173.

plaintiff or defendant. The check was afterwards lost. In an action to recover the collections for which the check had been given, it was HELD:

1st. That the check was not paid by Nicholson & Sons.

2nd. That being hopelessly insolvent at the time the check was drawn upon them, their transfer of credit from the defendant to the plaintiff would have been a mere delusion.

3rd. That after their assignment for the benefit of creditors, Nicholson & Sons ceased to be a going concern, and neither they nor their trustees had the right to make a transfer of credit which was wholly worthless.

An instrument, headed with the name of a bank and a date, and over the signature of the cashier, drawn upon a firm engaged in banking business, and directing the payment to the order of a person named, of a specified sum of money, which is at the time on deposit with the drawee, without designating a future day of payment, is a check.

Where a bank receives a check on itself, endorsed "for collection and credit," it becomes the agent of the person sending it, and is liable to the latter for such damages as may be occasioned by its failure to give notice to the drawer of non-payment.

A failure of the bank on which a check is drawn and with which it is deposited "for collection and credit," to notify the drawer of its non-payment does not discharge him from liability, unless he has actually or presumptively suffered some loss or injury therefrom.

APPEAL from the Superior Court of Baltimore City.

This appeal was taken by the plaintiff from a *pro forma* judgment entered for the defendant by the Court below (RITCHIE, J.,) on a case stated. The right of appeal was reserved to each party. The case is stated in the opinion of this Court.

The cause was argued before BRYAN, FOWLER, PAGE, and BOYD, J.

*Edgar G. Miller, Jr.*, (with whom was *Leigh Bonsal,* on the brief,) for the appellant.

There was no payment of the debt due the plaintiff. When a depositor in a solvent bank draws a check upon it, and sends the check to his creditor, and the creditor deposits the check to his credit in the same bank, a transfer of property takes place. The drawer of the check is charged with the amount of the check by the bank, and the depositor is credited with the same amount. The drawer had a valuable credit with the bank, and this credit is acquired by the payee, who, in losing his right against the drawer, obtains a right of equal value against the bank.

But if the bank is on the point of failure the credit which the drawer of the check has at the bank is worthless. *Tyson & Rawls vs. Western National Bank,* 77 *Md.,* 412. And even supposing the defendant's credit had been transferred to the plaintiff on the books of J. J. Nicholson & Sons before the failure, how could the defendant make valid payment by a transfer of such a credit? The credit which the defendant had with Nicholson when the check reached him was worthless to it and to every one else.

In this connection the following quotation from the case of *Thomas vs. Supervisors of Westchestor County,* 115 *N. Y.,* 47, is in point. The Court said that "upon broad principles of justice it would seem that a man should not be allowed to pay a debt with worthless paper, though both parties supposed it to be good."

When a deed of trust was executed the right of the Nicholsons as a going concern to constitute itself a debtor of the plaintiff at once ceased. *Manufacturers' Bank vs. Continental Bank,* 148 *Mass.,* 553, 559; *First National Bank of Circleville vs. Bank of Monroe,* 33 *Fed. Rep.,* 408, 412; *First National Bank of Crown Point vs. First National Bank of Richmond,* 76 *Ind.,* 561, 570; *Levi*

*vs. National Bank of Missouri*, 5 *Dillon*, 104, 109, 110; *Morse on Banks and Banking*, sec. 248 (*a*).

When a check is received by a creditor, there is no presumption that he takes it in payment, but on the contrary, the implication is, that it is only to be regarded as payment if cashed. *Daniel on Negotiable Instruments*, sec. 1623. A check given for an antecedent debt is not an extinguishment of the debt, but only a means of payment. A check is not payment until paid. *Morse on Banks and Banking*, secs. 544, 546; *Burkhalter vs. Second National Bank of Erie*, 42 *N. Y.*, 538; *Blair & Hoge vs. Wilson*, 28 *Grattan*, 165, 171; *Woodville, et al. vs. Reed, et al.*, 26 *Md.*, 179, 190.

If the check be not paid and the payee is not negligent, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer either upon the debt or upon the check, at his option. *Blair & Hoge vs. Wilson*, 28 *Grattan*, 165, 171; *Syracuse, &c., R. Co. vs. Collins*, 3 *Lansing*, (*N. Y.*,) 29; *Jobbitt vs. Goundry*, 29 *Barb.*, 509; *Morse on Banks and Banking*, sec. 543.

In this case it appears from the agreed statement of facts, that the original check has been lost. It was, therefore, proper for the plaintiff to sue upon the original debt, which had not been merged in the check; the rule being that the acceptance of a security or undertaking of equal degree is of itself no extinguishment of the former debt, and that the plaintiff may recover on the original cause of action if the check or note has been lost. *Myers vs. Smith and Barrick*, 27 *Md.*, 43, 50; *Glenn vs. Smith*, 2 *G. & J.*, 493, 508.

The instrument was a check, and therefore the defendant drawer was not discharged by the failure to protest, not having been injured by such failure. *Bull vs. First National Bank of Kasson*, 123 *U. S.*, 105; *Merchants' Na-*

*tional Bank of Boston vs. State National Bank of Boston,*
10 *Wall.*, 604, 647; *Merchants' National Bank vs. Ritzin-
ger,* 118 *Ill.*, 484; *Harrison vs. Wright,* 100 *Indiana,* 515,
518, 519; *First National Bank of Cincinnati vs. Coates,* 3
*McCrary,* 9, 11; *Daniel on Negotiable Instruments, sec.*
1566; *Story on Promissory Notes, secs.* 487, 489; *Morse on
Banks and Banking, sec.* 362.

In the case of *Bull vs. First National Bank of Kasson,*
123 *U. S.*, 105, the Court clearly states the law as fol-
lows: " A check implies a contract on the part of the
drawer, that he has funds in the hands of the drawee
for its payment on presentation.  If it is dishonored the
drawer is entitled to notice, but unlike the drawer of a
bill of exchange he is not discharged from liability for
the want of notice, unless he has sustained damage or is
prejudiced in the assertion of his rights by the omission.
In *Merchants' Bank vs. State Bank,* 10 *Wall.*, 604, 647,
this Court said: 'The drawer is not discharged by the
*laches* of the holder in presentment for payment, unless
he can show that he has sustained some injury by the
default.' " See *Daniel on Negotiable Instruments, sec.* 1587;
*Benjamin's Chalmers' Digest, Art.* 258; *Story on Promis-
sory Notes, secs.* 492, 497, 498; *Morse on Banks and Bank-
ing, sec.* 421 (*d*); *Moses vs. Franklin Bank of Baltimore,*
34 *Md.*, '574; *Norris, et al. vs. Despard,* 38 *Md.*, 487;
*Clopper vs. Union Bank of Maryland,* 7 *Harr. & J.*, 92,
102.

This Court has held that notice of non-acceptance of
a bill of exchange is not necessary where the drawer at
the time when presentment should be made had no effects
in the hands of the drawee, or no reason to expect that
the draft would be honored; because he could not be in
any way injured under such circumstances.  *Eichelberger
vs. Finley,* 7 *Harr. & J.*, 381, 386; *Orear and Berkley vs.
McDonald,* 9 *Gill,* 350; *Schuchardt vs. Hall & Loney,* 36
*Md.*, 590, 602; *Cathell vs. Goodwin,* 1 *Harr. & G.*, 468,
470.

The principle of these decisions is that presentment and notice of dishonor of a draft should be given in order to protect the drawer from any loss that might in any way occur to him. But if the Court sees that no loss has occurred or can occur to the drawer by the failure to present or protest the draft, the drawer is not discharged by such failure.

A person who acts within the strict rules of law in the handling of commercial paper will not be held responsible for any loss which may thereby occur. *Syracuse, &c., R. Co. vs. Collins*, 3 *Lansing*, 29, affirmed in 57 *N. Y.*, 641; *Burkhalter vs. Second National Bank of Erie*, 42 *N. Y.*, 538; *Graham vs. Morstadt*, 40 *Missouri App.*, 333.

It is proper for a bank holding a check, drawn upon another bank, to send it to the drawee bank for collection. *Indig vs. National City Bank of Brooklyn*, 80 *N. Y.*, 100; *Thomas vs. Supervisors of Westchester County*, 115 *N. Y.*, 47, (4 *L. R. A.*, 477.)

*Frank Woods*, for the appellee.

The case under discussion turns in favor of the appellee upon the important exception to the general rule that, if the creditor parts with the bill received as conditional payment, or is guilty of *laches*, to the prejudice of the debtor, in not presenting it for acceptance or payment in due time, or in failing to give the debtor due notice of its dishonor, the debtor is discharged. *Glenn vs. Smith*, 2 *Gill & J.*, 493; *Lewis Brothers & Co. vs. Brehme*, 33 *Md.*, 430. If the creditor falls within this exception he can neither pursue his debtor upon the bill received as conditional payment, nor upon the original contract. His right of action will be gone altogether.

The drawer of the draft in question had ample funds in the hands of its drawee and a reasonable expectation that its draft would be honored when presented for payment. Such a drawer is everywhere entitled to all the

defences afforded by commercial law to the endorser of negotiable paper. The following citations from standard text books are deemed ample on this point: *Tiedeman on Com. Paper*, secs. 310, 355; 2 *Daniel on Nego. Instr.*, sec. 1276; *Orear and Berkley vs. McDonald*, 9 *Gill*, 356–7; *Schuchardt vs. Hall & Loney*, 36 *Md.*, 602; *Brandt vs. Mickle and Wetherall*, 28 *Md.*, 437.

Due presentment and notice of dishonor are necessary in order to charge the appellee. *Tiedeman on Com. Paper*, sec. 334; 2 *Daniel on Nego. Instr.*, secs. 970, 971, 1076; 1 *Daniel on Nego. Instr.*, sec. 452; 3 *Randolph Com. Paper*, sec. 1201.

Neither the fact that the draft in question was drawn as a conditional payment of a pre-existent debt, nor the fact that on the day it was received by mail by the drawees they were insolvent, afford any valid excuse for appellant's failure to make a legal demand on the drawees for payment, and to protest the draft and give appellee due notice of its dishonor, if it was dishonored. 3 *Randolph on Com. Paper*, sec. 1329; 3 *Kent's Com.*, 110; *Wood's Byles on Bills and Notes*, \*206; *Story on Bills of Exchange*, secs. 326, 347; 2 *Daniel on Nego. Instr.*, secs. 1171, 1172; *Tiedeman on Com. Paper*, sec. 366; *Orear and Berkley vs. McDonald*, 9 *Gill*, \*351.

The only evidence of presentment for payment is that the draft was by mail forwarded to the drawees by appellant, and that it was received by the drawees and charged on their books to the debit of appellee's account. To say nothing of the manifest tendency of this evidence to prove that the draft was duly honored and paid, it is not sufficient, upon the supposition that the draft was dishonored, to prove such presentment for payment as the law requires, in order to charge appellee as its drawer. *Halls, Kirkpatrick & Co. vs. Howell*, 1 *Harper's Law Reports*, 426; *Gillespie vs. Hannahan*, 4 *McCord*, 504.

A presentment or demand of payment must be made personally upon the acceptor, at his place of business, or at his dwelling-house, when his residence is known, or may be ascertained by reasonable inquiry; and cannot be made by a written demand, sent to him through the post office. *Story on Bills of Exchange,* sec. 325; *Stuckert vs. Anderson,* 3 *Wharton,* 116; *McGruder vs. Bank of Washington,* 9 *Wheat.,* 601; 1 *Parsons on Bills and Notes,* sec. 371; 1 *Daniel on Nego. Instr.,* sec. 654; *Philips vs. McCurdy,* 1 *Harr. & J.,* 187.

PAGE, J., delivered the opinion of the Court.

This is an action of *assumpsit* upon a case stated for the opinion of the Court, with a request to render a judgment in accordance therewith. The appeal is taken from the *pro forma* judgment of the learned Judge who sat in the case. The defendant below, being indebted to the plaintiff for certain collections made by the former, on account of the latter, on the 9th day of January, 1892, mailed to the plaintiff the following instrument of writing, viz.,

"THE SUTTON BANK.
"SUTTON, W. VA., *Jan.* 9, 1892.
"Pay to the order of J. J. Jones, Esq., Cashr., $936.50. Nine hundred and thirty-six and $\frac{50}{100}$ dollars.
T. M. BERRY,
*Cashier.*
To J. J. NICHOLSON & SONS,
No. 1916.        Baltimore, Md."

The plaintiff received it on the thirteenth following, and on the same day forwarded it by mail to the Nicholsons, (with whom both parties kept accounts,) endorsed as follows: "For collection and credit account of Exchange Bank, January 13th, 1892, of Wheeling, West Va., John J. Jones, Cashr." On the morning of the

Exchange Bank *vs.* Sutton Bank.

14th, the paper was received by the Nicholsons, and was stuck upon a file where were generally placed the various checks drawn upon the house in the ordinary course of business. The defendant then had on deposit to its credit with the banking house a sum in excess of $956$\frac{50}{100}$. Later in the day it was taken from the file and entered to the debit of the defendant's account, but was not then entered as a credit to the account of the plaintiff. On the morning of the 14th, Nicholson & Sons were hopelessly insolvent, and about one o'clock of that day made an assignment to trustees, who, after they had taken possession, entered the check to the credit of the plaintiff; but at the time of the receipt of the check, the Nicholsons did not have in their banking house the amount of the plaintiff's claim in actual cash, nor at any time thereafter. The paper is now lost, and it is not known whether it was protested or not; but if it was, no notice thereof, or of the non-payment was sent to or received by either the plaintiff or defendant. A demand was made by the plaintiff on the defendant for payment on the 7th of June, 1893, and, until that day the defendant had no knowledge that it had not been paid. This was the only demand ever made on the defendant by any one.

It is not contended that the treatment of the paper by the Nicholsons or their trustees was tantamount to a payment. There was no credit given to the payees for the amount; and, under the circumstances of the case, until this was done there was no evidence that it had been accepted. Whether it be regarded as a bill of exchange or a check, it did not operate as an assignment *pro tanto* of the drawer's funds in the hands of the Nicholsons until it was accepted. *Moses vs. Franklin Bank of Baltimore*, 34 *Md.*, 580.

So far as the plaintiff was concerned, there was no evidence that the Nicholsons had accepted the order

upon them, and thereby agreed to become responsible to it for the amount. And apart from this, at the time the paper was drawn, and when received by the Nicholsons, they were hopelessly insolvent; and under such circumstances a transfer of credit from the defendant to the plaintiff would have been a mere delusion. After the assignment they ceased to be a going concern, and neither the firm nor their trustees had the right to make a transfer of credit which was wholly worthless. *Manufacturers' Bank vs. Continental Bank*, 148 *Mass.*, 553. A check or bill is not a payment until paid, *Morse on Banks and Banking*, secs. 544, 546; *Lewis Bros. & Co. vs. Brehme*, 33 *Md.*, 412; *Insurance Co. vs. Smith*, 6 *Harr. & J.*, 166, or unless it is accepted as cash, or the creditor parts with it, or is guilty of some *laches* by which injury inures to -the drawer. *Glenn vs. Smith*, 2 *Gill & J.*, 509. In this case, therefore, unless it can be shown that the plaintiff has been guilty of some negligence whereby the defendant has been either actually or constructively injured, the paper having been lost, it was not improper to resort to the original cause of action. *Myers vs. Smith and Barrick*, 27 *Md.*, 50. What was the character of the paper offered in evidence? The appellee contends it is a bill of exchange. This Court has stated in *Moses vs. Franklin Bank of Baltimore*, 34 *Md.*, 579, that "a check is denominated a species of inland bill of exchange, not with all the incidents of an ordinary bill of exchange it is true, but still it belongs to that class and character of commercial paper." And in *Bull vs. First National Bank of Kasson*, 123 *U. S.*, 105, in which an instrument of writing exactly similar to the one in this case was declared by the Court to be a check, Judge FIELD, speaking for the whole Court, says: "When an instrument is drawn upon a bank, or a person engaged in the banking business, and simply directs the payment to a party of a specified sum of money which is at

the time on deposit with the drawee, *without* designating a future day of payment, the instrument is to be treated as a check. The chief points of difference are that a check is always drawn on a bank or banks. No days of grace are allowed. The drawer is not discharged by the *laches* of the holder in presenting it for payment, unless he can show that he has sustained some injury by the default. It is not due until payment is demanded, &c.'' *Merchants' Bank vs. State Bank,* 77 *U. S.,* 647; *Harker vs. Anderson,* 21 *Wend.,* 375; *Merchants' National Bank vs. Bitzinger,* 118 *Ill.,* 484; *Harison, Receiver vs. Wright, et al.,* 100 *Indiana,* 515; *First National Bank of Cincinnati vs. Coates,* 5 *McCrary,* 9; *Daniel on Nego. Instr.,* sec. 1566; *Story on Prom. Notes,* sec. 487; *Morse on Banks & Banking,* sec. 362.

We do not think what was said by this Court in *Hawthorn vs. State,* 56 *Md.,* 534, is in conflict with the views here expressed. There, as well as in *Moses vs. Franklin Bank of Baltimore,* (*supra,*) they held that a check was a species of bill of exchange, not with all the incidents of an ordinary bill of exchange, but belonging to that class and character of commercial paper, or, in other words, as was said by COWEN, J., in *Hacker vs. Anderson,* (*supra,*) the '' bill is the *genus* and the check is the *species;*'' and therefore, Hawthorn was within the terms of the statute, which made it a felony to forge an endorsement on a bill of exchange. The instrument of writing in question in this case, must therefore be treated as a check. On receipt of the check the plaintiff, with reasonable promptness, forwarded it to the Nicholsons, endorsed ''For collection and credit account of Exchange Bank, Jan. 13, 1892, of Wheeling, W. Va.'' Such an endorsement constituted them the agents of the plaintiff to collect and credit, and at the same time, as drawees of the check, they were also the agents of the drawers to pay. The plaintiff was therefore responsible

for any omission of duty on the part of the Nicholsons in their capacity as collectors. As collecting agents of the plaintiff, it was their duty to do whatever was necessary in respect to demand and notice to the drawer, and for any negligence in regard to this they would be liable to the plaintiff, and not to the defendant, for such damages as might be occasioned by reason of their neglect. *Montgomery County Bank vs. Albany City Bank,* 7 *N. Y.,* 459, (3 *Seld.*) The evidence is clear that they did not transfer the credit for the amount of the note, from the defendant to the plaintiff. If they had done this, other questions would have to be considered here, upon which we are not now called to decide, and do not intimate our opinion; and the failure to make such transfer was equivalent to a refusal to accept and pay. Under such circumstances, it was their clear duty to give notice of the non-payment, to the drawer, in order that the drawee might take any necessary steps to protect its interest; and if they failed to do so, and loss ensued by reason of such want of notice, it falls on the plaintiff, and not upon the drawer. A failure however to notify the drawer of the non-payment of a check does not always discharge him from liability; it must also be shown that he has either actually or presumptively suffered from loss or injury therefrom. *Daniel on Neg. Inst.,* sec. 1587, *and authorities there cited; Bull vs. First National Bank of Kasson,* (*supra.*) In the case of *Norris, et al. vs. Despard,* 38 *Md.,* 491, it is true this Court said: "If the notice be not given, it is a presumption of law that he is injured by the omission;" but they explain this remark by adding, that "in the application of the principle, Courts must inquire into the liabilities of the respective parties to the check for the purpose of ascertaining whether this injury, either *actual* or *presumptive, could take place.*" And further on, in the same opinion, "it was but just that they should give the defendant notice

of the non-payment in reasonable time before they brought their action, or *to have shown that the defendant sustained no injury in consequence.*"  *Rhett vs. Poe*, 2 *Howard*, 457; *Eichelberger vs. Finley*, 7 *Harr. & J.*, 385; *Schuchardt vs. Hall & Loney*, 36 *Md.*, 602.

Here it is clear, that at the time the check reached the Nicholsons, they were hopelessly insolvent, and did not have in their banking house the amount of the check in actual cash.  Their assignment on the same day, placed all their assets in the hands of trustees, and definitely fixed the *status* of any claim the defendant had, or could have, upon them.  Under these circumstances, we can perceive no way by which, on account of the want of notice, injury to the defendant, either "actual or presumptive," could take place.

The judgment below must be reversed.

> *Judgment reversed, and judgment for the appellant, for the sum of* $1,053.56, *with interest from this date until paid, and costs.*

